# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAUL DESTINE,

    Petitioner,

v.

WARDEN DOLL,

    Respondent.

NO. 3:17-CV-1340

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) filed by Petitioner Saul Destine ("Petitioner"). For the reasons that follow, the petition will be granted insofar as Petitioner seeks an individualized bond hearing.

## I. Background

Petitioner is a citizen and national of Haiti. (*See* Doc. 4, Ex. "1", 3). On October 30, 2016, Petitioner applied for admission into the United States from Mexico via the Calexico Pedestrian Port of Entry. (*See id*. at 2-3). Petitioner was charged as inadmissible because he did not have valid entry documents. (*See id*. at 3).

On or about December 29, 2016, immigration officials charged Petitioner with a violation of § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*See id*. at Ex. "2", 1). That charge was sustained on February 1, 2017. (*See id*.).

On June 20, 2017, the Immigration Judge denied Petitioner's applications for asylum and withholding of removal and ordered Petitioner removed from the United States. (*See id*. at Ex. "3", 5). Petitioner reserved his appeal and on July 7, 2017, he filed an appeal with the Board of Immigration Appeals ("BIA"). (*See id*. at Ex. "4", 1).

On August 1, 2017, Petitioner filed for relief pursuant to 28 U.S.C. § 2241. (*See*

Doc. 1, *generally*). Specifically, Petitioner contends that his continued detention is unconstitutional and that he should either be released or an individualized bond hearing should be ordered. (*See* Doc. 1, *generally*). The Government disputes that Petitioner is entitled to relief. (*See* Doc. 4, *generally*). The § 2241 petition is now ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

## III. Discussion

Petitioner is presently detained as an "arriving alien" pursuant to 8 U.S.C. § 1225(b). *See also* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, . . ."). Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 122(a)(1). The Supreme Court recently explained that "applicants for admission fall in to one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, - - - U.S.

2

- - - , 138 S. Ct. 830, 837, 200 L. Ed. 2d 122 (2018). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id*. (internal citations omitted). The *Jennings* Court went on:

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

*Id*.

Insofar as Petitioner argues that he is statutorily entitled to a periodic bond hearing under § 1225(b), the *Jennings* Court rejected that reading of the statute:

> As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point,

3

> however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Id*. at 842. Accordingly, the Court concluded that both §§ 1225(b)(1) and (b)(2) "mandate detention until a certain point and authorize release prior to that point only under limited circumstances. As a result, neither provision can reasonably be read to limit detention to six months." *Id*. at 844. In view of *Jennings*, to the extent that Petitioner claims he is statutorily entitled to a periodic bond hearing based on the Third Circuit's decisions in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232, 234 (3d Cir. 2011) and *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473 (3d Cir. 2015), that claim fails. *See*, *e.g.*, *Theophile v. Doll*, No. 1:17-cv-2404 (M.D. Pa. May 13, 2018) (Kane, J.), ECF No. 13; *see also Otis V. v. Green*, No. 18-742, 2018 WL 3302997, at *3 (D.N.J. July 5, 2018).[1]

*Jennings*, however, did not reach the merits of the constitutional challenge before it. *See Jennings*, 138 S. Ct. at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. . . . [W]e remand the case to the Court of Appeals to consider them in the first instance."); *see also Otis V.*, 2018 WL 3302997, at *6 ("The Supreme Court left open, however, the possibility of a successful as applied constitutional challenge to the statute on an individual case by case basis. . . .").

The United States District Court for the District of New Jersey's recent decision in *Otis V.* details the due process rights of a § 1225(b) detainee:

---

[1] *Diop* and *Chavez-Alvarez* both concluded that 8 U.S.C. § 1226(c), which applies only to criminal aliens who have already effected an entry into the United States, was subject to an implicit reasonable time limitation. *Jennings* rejected reading both §§ 1225(b) and 1226(c) as subject to such an implicit limitation. *See Otis V.*, 2018 WL 3302997, at *6 (*Diop* and *Chavez-Alvarez* abrogated by *Jennings*); *see also Coello-Udiel v. Doll*, No. 17-1414, 2018 WL 2198720, at *3 (M.D. Pa. May 14, 2018).

4

To the extent that Petitioner asserts a constitutional claim for relief [from detention under § 1225(b)], such a claim would be affected by his status as an applicant for admission rather than an alien who has previously entered the country. *See, e.g., Maldonado v. Macias*, 150 F. Supp. 3d 788, 798-800 (W.D. Tex. 2015). Petitioner's status as an applicant for admission affects his right to Due Process because applicants for admission are subject to the "entry fiction" which provides that, for legal and constitutional purposes, an alien stopped at the border is considered to remain at the border even if he is paroled into the country, and is treated as such for the purpose of determining his rights to relief. *Id*.; *see also Kay*[, 94 F. Supp. 2d at 554] (describing the "entry fiction"). The distinction is not one without a difference, as the Supreme Court in *Zadvydas* observed that it "is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," and that "once an alien [for legal purposes] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." 533 U.S. at 693, 121 S. Ct. 2491. The Court has likewise suggested that even for those aliens found within the United States, "the Due Process Clause does not require [the Government] to employ the least burdensome means to accomplish [the removal of those aliens]." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003). Indeed, "the Supreme Court has made clear that inadmissible aliens are entitled to less due process than are resident aliens." *Maldonado*, 150 F. Supp. 3d at 799 (citing *Demore*, 538 U.S. at 547, 123 S. Ct. 1708 (O'Connor, J., concurring)). Indeed, as *Zadvydas* explained, an alien's treatment "as if stopped at the border" has historically been held sufficient to justify lengthy and seemingly interminable detention. 533 U.S. at 692-93, 121 S. Ct. 2491 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S. Ct. 625, 97 L. Ed. 956 (1953)). By all appearances, then, Petitioner, as an alien deemed an applicant for admission who is legally treated as if stopped at the border is entitled to something less than the full panoply of rights usually conferred by the Due Process Clause. *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) (holding that at least the substantive portion of the Due Process Clause must apply to even those aliens at the border as to hold otherwise would permit the Government to "torture or summarily execute them" which would amount to an absurd proposition).

Thus, although Petitioner is likely not entitled to all the rights Due Process would provide an alien considered [to be] within this country, he has at least some entitlement to proper procedures. The question that arises, then, is whether mandatory detention *ad infinitum* comports with that entitlement. On this issue, however, neither the Supreme

Court nor the Third Circuit has provided clear guidance.

*Id*. (alterations in original).

*Otis V.* is consistent with the weight of authority from this District finding that § 1225(b) detainees "enjoy the same basic due process right afforded to many other classes of detained aliens; that is, the right to an individualized bond determination once the length of their removal detention has become unreasonable." *Shire v. Decker*, No. 17-1984, 2018 WL 509740, at *4 (M.D. Pa. January 23, 2018) (Rambo, J.); *see also Barthelemy v. Doll*, No. 17-1508, 2018 WL 1008408, at *3 (M.D. Pa. Feb. 22, 2018) (Munley, J.); *Ahmed v. Lowe*, No. 16-2082, 2017 WL 2374078, at *4-5 (M.D. Pa. May 31, 2017) (Mariani, J.); *Ahad v. Lowe*, 235 F. Supp. 3d 676, 678 (M.D. Pa. 2017) (Kane, J.); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 381-82 (M.D. Pa. 2012) (Caputo, J.).

Thus, the question is whether Petitioner's continued detention has "become so unduly prolonged that it renders § 1225(b) unconstitutional as applied to him?" *Otis V.*, 2018 WL 3302997, at *7. To answer that question, the *Otis V.* court reasoned:

> Although the Third Circuit's ultimate rulings in *Diop* and *Chavez-Alvarez* have been abrogated by *Jennings*, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance to how this Court should address § 1226(c) claims. Specifically, the Court accepts that the "constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds." *Chavez-Alvarez*, 783 F.3d at 474 (quoting *Diop*, 656 F.3d at 232, 234). This Court likewise is mindful that "any determination on reasonableness [must be] highly fact specific" and that "at a certain point - which may differ case by case[ ] - the burden to an alien's liberty outweighs" the Government's interest in detention without bond," *id*. at 474-75, and that detention which is so unreasonable as to amount to an arbitrary deprivation of liberty cannot comport with the requirements of the Due Process Clause. *Id*. at 474; *see also Demore*, 538 U.S. at 432 (Kennedy, J., concurring). Because, however, *Jennings* foreclosed the constitutional avoidance basis provided by the Third Circuit in its

6

> determination that detention will normally become suspect between six months and a year, and because *Jennings* leaves open only the question of whether § 1226(c) is unconstitutional as applied to the petitioner, it is insufficient that Petitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for Petitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause. If Petitioner's detention has not become so unreasonable or arbitrary that continued application of the statute is unconstitutional as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief. *Jennings*, 138 S. Ct. at 846-47.
>
> In prior cases which have applied a now-abrogated implied reasonableness limitation to § 1225(b) detainees, this Court and others in this District frequently found that detention for just over a year was, given the lesser Due Process protections applicable to applicants for admission, insufficient to render continued detention so suspect as to require a bond hearing. As this Court has previously determined that detention of just over a year is normally insufficient to render detention under § 1225(b) constitutionally suspect, it necessarily follows that detention for a similar period of time cannot be so prolonged and unreasonable as to actually render the statute unconstitutional as applied to Petitioner absent egregious factual circumstances not present in this case.

*Id*. at *8.

In contrast to the petitioner in *Otis V.*, Petitioner in the matter *sub judice* has been detained for twenty-one (21) months at present. Nothing has been filed of record in this case in the past year. Moreover, while the parties have not provided any information regarding the status or outcome Petitioner's BIA appeal, he appears to be scheduled for a hearing before an Immigration Judge next month. Thus, on these facts, Petitioner has shown that an individualized bond hearing is warranted. *See*, *e.g.*, *Ahmed*, 2017 WL 2374078, at *5 (twenty-seven (27) months unreasonable); *Shire*, 2018 WL 17-1984, at *4 (twenty-five (25) months unreasonable); *Ahad*, 235 F. Supp. 3d at 688 (twenty (20) months unreasonable).

## IV. Conclusion

For the above stated reasons, the § 2241 petition will be granted in part insofar as it seeks an individualized bond hearing before an Immigration Judge.

An appropriate order follows.

July 26, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge